Ashburn, J.
Defendant claims the trial court erred in rejecting the testimony he proposed to offer to the jury, and in refusing him a new trial. Both questions will be determined in passing upon the alleged error of the court in'excluding testimony.
In the course of the trial the state, among other witnesses, introduced John W. Houghton, who testified, substantially, that on or about July 1, 1873, he told defendant he could not sell ale or beer lawfully to persons in the habit of getting intoxicated ; that he then read the liquor law to him, and named over to him some thirteen persons who were in the habit of getting intoxicated, and told him he could not lawfully sell ale or beer to any person in the habit of getting intoxicated; that among the' persons named to the defendant as persons in the habit of getting intoxicated was Frederick Stuchfield, who is named in the indictment as the person to whom the intoxicating liquor was sold by defendant.
No testimony was offered by the state tending to show that Stuchfield had the reputation of being a person in the habit of getting intoxicated.
The defendant then offered himself as a witness in his own behalf, and among other things testified that he had no knowledge that Frederick Stuchfield was a person in *384 the habit of getting intoxicated; that he never saw him.' intoxicated, and never heard that he was a person in the habit of getting intoxicated, except such information as he derived from Houghton, as testified to by him. His counsel then asked him to state if, after the conversation with Houghton, he took any pains to ascertain whether the statement made by Houghton to him respecting Stuchfield was correct or not. To this question the state objected,, and the court sustained the objection, to which -ruling of the court the defendant excepted.
The defendant then offered to prove by himself and other witnesses that, after his conversation with Houghton, he made inquiries of divers persons who were well acquainted with Stuchfield, and that in answer to his inquiries he was informed that Stuchfield was not a person in the habit of getting intoxicated. On objection by the state, this testimony was excluded, and defendant excepted.
The defendant then called Isaac Bennett as a witness, and asked him if, on or about the 1st day of July, 1873, defendant made inquiries of him respecting Frederick Stuchfield being a person in the habit of getting intoxicated or not, and if so, what that inquiry was, and what reply he made-thereto. To this question the state objected. The defendant, by his counsel, then stated to the court that he expected to prove by the witness Bennett that he was well acquainted with' Frederick Stuchfield; that he was not a person in the habit of getting intoxicated, and that he so told defendant; whereupon the, court sustained the objection so far as to exclude from the jury what the witness-told the defendant. To this ruling of the court in excluding the proposed testimony defendant excepted.
The indictment ehai’ges a violation of section 3 of the Ohio liquor law. It provides : “ That it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors to persons intoxicated, or who are in the habit of getting intoxicated.”
To convict for a violation of this section, as construed' *385 by tbe supreme court in Miller and Gibson v. The State, 3 Ohio St. 475, it is necessary to aver in the indictment, and prove on the trial, that defendant knew the person to whom the sale was made was in the habit of getting intoxicated. To constitute this offense there must be a concurrence and proof of three essential criminal conditions: 1. The fact of selling intoxicating liquors to the prohibited person ; 2. A criminal intent, and 3. Guilty knowledge.
In this class of cases, where the unlawful sale is proven, the common law intent sufficiently appears without special proof. Not so as to guilty knowledge. Its existence must be shown by the state beyond reasonable doubt, for the reason that its absence is a valid defense.
The defense was the absence of guilty knowledge. The state haying introduced testimony tending to charge the defendant with guilty knowledge, it was competent for him to show a want of such knowledge. We are unable to see upon -what principle the testimony offered and rejected was incompetent. Eor the purpose offered, it was neither hearsay nor collateral. Cases involving the knowledge, prudence, or good faith of a party in a transaction are exceptions to the rule of evidence excluding what might, in other cases not involving these elements, be held collateral facts. 1 Greenleaf Ev., sec. 53, and note 3 to this section. In this case the rejected testimony would have had a direct tendency to exculpate the defendant from the charge of guilty knowledge, and upon this issue, was .original and competent testimony to be considered by the jury. “ Where the question is, w'hether the party acted prudently, wdsely, or in good faith, the information on which he acted, whether true or false, is/original and material evidence. This is often illustrated in actions for malicious prosecutions.” Ib., sec. 101. This is a familiar rule , of evidence in homicidal cases, under the plea of self-defense, and arises from this, there can be no crime where the criminal mind is wanting. Bishop on Grim. Law, par. 305.
*386 There were two controverted questions in the case: 1. Was Stuchfield a person in the habit of getting intoxicated ? 2. Did defendant at the time of the alleged sale Jen mo he was a person of such habit? As .shown upon the record, Houghton’s statement to defendant that Stuchfield was a person in the habit of getting intoxicated, was not conclusive of that fact. His statement must be treated as his opinion of such being the fact merely, since the record discloses no fact or circumstance connected with his statement in support of it. As an opinion unsupported by facts, it was entitled to no .more consideration than the opinion of any other witnesses equally credible, formed and given under like circumstances.
Habitual intoxication is by no means a clearly defined condition. As this case does not call for a definition of that condition, we will not attempt to define it with accuracy. When we say a person is in the habit of getting intoxicated, it ordinarily means those times occur about as often as he finds an opportunity to do so. The difficulty of determining whether this habit attaches to a particular pei’son arises mostly from a want of a settled standard for* comparison. Webster defines habitual: “Eoi’med or acquired habit; frequent use or custom.” As an abstract defintion well enough; and Mr. Houghton might think it attached to the person of Stuchfield, when another of his acquaintances, with as favorable opportunities of knowing his habit in this respect, might hold the reverse opinion.
Defendant testifies that he did not know and never heard that Stuchfield was a person in the habit of getting intoxicated. In that case the natural and proper thing for him to do, if he did not give credit to the statement of Houghton, would be to seek to inform himself as to Stuchfield’s habit in this respect. Where seek it ? Properly and naturally from those well acquainted with him. We think when he was charged with guilty knowledge of Stuchfield’s alleged habit, an honest effort to get information with favorable results should avail him something on his *387 trial. It could not if denied the right to place the information obtained before the jury. How far it would go toward excusing him was a question for the jury to determine, considering his good faith in seeking it, his care in its use, and the due weight to be given to it.
Section 2 prohibits the sale of intoxicating liquors to minors. An indictment under this section must aver, and the proof show, the seller had guilty knowledge of the minority at the time of the sale. In this respect, sales to a minor and a person in the habit of getting intoxicated are governed by the same rules. Where the seller, using due care, is deceived, but acting in good faith really believes that the person to whom he sells is of full age, while the fact is otherwise, he does not violate the statute. He may show in his justification that the person being unknown to him, looked like an adult, and was treated and spoken of by members of his family and the community as of full age. Bishop, on Statutory Crimes, par. 1021.
We think in such case it wouhhbe competent for him to go a step further, and show that he made inquiry of the minor’s parents, or other persons likely to know as to his .age, and was told by them that he was of full age. It would be competent for the defendant to show this by bis own testimony and that of those of whom he made the inquiry. This principle applies as well to the case of the person in the habit of getting intoxicated as to minority, the condition being that the inquiry, to be of value, should be made of persons so situated in relation to the fact to be proved, as to be able to give the information sought.
To make such testimony available as tending to exculpate the defendant, he must have acted in good faith and with due care. We are considering the competency of such testimony only, and not the effect to be given to it. That is to be left to the jury. But Mr. Bishop, in his work above named, on page 1021, says :
“ Aud when this good faith and this due care do exist, and there is no fault or carelessness of any kind, and what is done is such as would be proper and just were the fact *388 what it is thus honestly believed to be, there is no principle known to our criminal jurisprudence by which this morally innocent person can be condemned because of the existence of a fact which he did not know and could not ascertain. On the other hand, to condemn him w-'ould be to violate those principles which constitute the very foundation of our criminal jurisprudence. Honest error of a fact is as universal an excuse for what would be otherwise a criminal act as insanity.”
This 'may be a strong, but is a just statement of the excusing principle in our criminal jurisprudence. It shows the necessity of allowing a person accused of knowingly violating the law to prove on the trial the pains he took to ascertain the truth about the fact or transaction that w-ould, if knowingly done, criminate him, as wrnll as the further necessity of allowing him to give in evidence the nature and extent of the information thus obtained, and upon which hé claimed to have acted.
Acting on this principle of presumptive innocence, and absence of guilty knowledge, the defendant, in Commonwealth v. Bradford, 9 Met. 268, was permitted to show that he had sought information,-from persons whom he supposed knew, as to his right to vote. He was charged with voting, knowing himself not to be qualified to vote. The court held: “ Evidence that the party consulted counsel as to his right to vote, and submitted to them the facts of his case, and was advised by them that he had the right, is admissible in his favor on the trial of an indictment against him for willfully voting, knowing himself not to be a qualified voter, but not conclusive evidence that he did not know that he was not a qualified voter.”
A different doctrine has been held in some of the states. "We think this the better rule. It allows ignorance or mistake of facts to go in excuse, when an honest effort has been made and due care used to obtain correct information on which to act.
The principle may be thus stated: In prosecutions under section three of the act to provide against the evils result *389 ing from the sale of intoxicating liquors in the State of Ohio, defendant may show, by his own and other persons’ testimony, that shortly anterior to the time of the-alleged unlawful sale he made inquiry of persons well acquainted with the person, named in the indictment as a person in the habit of getting intoxicated, whether he was a person in the habit of getting intoxicated; and also show what information he obtained from such persons; his good faith and due care in seeking and obtaining such information, as well as the proper effect thereof, to be left to the jury, under all the circumstances.
Judgment reversed, and cause remanded to the court of common pleas for further proceedings.